UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **LINDA KUNDINGER**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**CARSURE, LLC**, a Texas Limited Liability Company,<br><br>Defendant. | Case No. 17-cv-343<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Linda Kundinger ("Plaintiff" or "Kundinger") brings this action against Defendant CarSure, LLC ("CarSure" or "Defendant"), individually and on behalf of all others similarly situated (the "Class" as defined below), and complains and alleges upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including her attorneys' investigation.

### I. NATURE OF THE ACTION

1.   The Driver's Privacy Protection Act, 18 U.S.C. § 2721, *et seq.* (the "DPPA") is a federal law that was passed in reaction to a series of abuses of drivers' personal information held by government entities. The DPPA's purpose is to safeguard the personal information of licensed drivers from improper use or disclosure.

2.   The DPPA requires all states to protect the privacy of personal information contained in an individual's motor vehicle records, including, but not limited to, the driver's name, address, and phone number. While this type of information may be obtained from the department of motor vehicles and used by any federal, state or local agency in carrying out its functions, safety purposes, or market research, the DPPA does not allow private companies to

obtain this information to solicit potential customers, advertise, or harass individuals – which is *precisely* what CarSure has done to Plaintiff and the other Class members.

3. Indeed, despite the DPPA's restrictions on the use of personal information, CarSure violates the law by obtaining the information to solicit business by sending misleading letters to prospective customers.

4. CarSure markets and sells aftermarket automobile service and repair warranties to motor vehicle owners and lessees. Accordingly, one of CarSure's primary functions is to identify prospective customers to whom it can market the warranty products it sells, *i.e.*, persons who own or lease motor vehicles with manufacturer-supplied warranties that have expired or are about to expire. To solicit sales, CarSure must obtain at least the name and mailing address of each of its leads.

5. CarSure obtains sales leads from third-party data suppliers who have obtained personal identifying information of motor vehicle owners from motor vehicle records, including information originally gathered by the Wisconsin Department of Motor Vehicles ("Wisconsin DMV") and other state departments of motor vehicles throughout the country, which agencies have gathered that information for the purpose of registering vehicles and communicating with vehicle owners.

6. Owners' names and mailing addresses, among other personal identifying information, constitute "personal information" as defined by the DPPA. *See* 18 U.S.C. § 2725(3).

7. "Motor vehicle records," as defined by the DPPA, include driver's licenses, vehicle registrations, and identification cards issued by any state department of motor vehicles,

as well as records maintained internally by the Wisconsin DMV and all other state departments of motor vehicles. *See* 18 U.S.C. § 2725(1).

8. Plaintiff is a licensed Wisconsin driver and vehicle owner who supplied the Wisconsin DMV with her name and mailing address, as well as other personal identifying information when she applied for a Wisconsin driver's license and to register her motor vehicle.

9. CarSure obtained Plaintiff's name and mailing address from a third-party data supplier who, in turn, obtained Plaintiff's name and mailing address from Wisconsin motor vehicle records.

10. CarSure solicited Plaintiff to purchase an aftermarket motor vehicle warranty by mail.

11. Plaintiff never consented, expressly or otherwise, to CarSure's acquisition or use of her personal information for any purpose.

12. CarSure's acquisition and use of Plaintiff's personal information was not covered under any of the permissible uses denoted in 18 U.S.C. § 2721(b).

13. Plaintiff's privacy interests were invaded by CarSure's acquisition of her personal identifying information from protected motor vehicle records and CarSure's use of that information for marketing and solicitation purposes.

14. Plaintiff brings this lawsuit pursuant to 18 U.S.C. § 2724, on her own behalf and on behalf of all others whose personal information contained in motor vehicle records was obtained, disclosed, or used by CarSure for marketing or solicitation purposes.

## II. JURISDICTION AND VENUE

15.     This is a civil action alleging Defendant's violation of the DPPA, a federal statute enacted for the purpose of protecting personal information[1] and highly restricted personal information[2] contained in individuals' driving records, and preventing individuals from being harassed or otherwise inappropriately solicited at their home addresses.

16.     This Court has original subject matter jurisdiction over this action pursuant to 18 U.S.C. § 2724(a) and 28 U.S.C. § 1331.

17.     This Court has personal jurisdiction over CarSure, a Texas limited liability company, as it regularly transacts business within the State of Wisconsin, including but not limited to its solicitation of Plaintiff.

18.     Venue is proper under 28 U.S.C. § 1391(b) and (c).

## III. PARTIES

*Plaintiff*

19.     Linda Kundinger is a resident of Park Falls (Price County), Wisconsin, which is located within the Western District of Wisconsin.

*Defendant*

20.     CarSure is a limited liability company organized under the laws of the State of Texas, and regularly transacts business in the State of Wisconsin.

21.     Defendant was previously a limited liability company organized under the laws of the State of Nevada under the name "VSC Marketing Group, LLC". CarSure also operates under

---

[1] As defined in the DPPA, information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status. 18 U.S.C. § 2725(3).

[2] As defined in the DPPA, an individual's photograph or image, social security number, medical or disability information. 18 U.S.C. § 2725(4).

4

the trade name "Repair Defense Network" and maintains a website at www.repairdefensenetwork.com.

22.   The Better Business Bureau has "urg[ed] consumers to use caution when considering doing business with [CarSure]" because it has "received numerous complaints" regarding CarSure's business practices. According to the Better Business Bureau's website, it has received one-hundred-and-twenty-five (125) consumer complaints against CarSure, and ninety-five percent (95%) of CarSure's customer reviews on the site are negative.[3]

23.   Defendant sends unsolicited letters to individuals' homes after obtaining their personal information, in violation of the DPPA. Some examples and excerpts of complaints and/or reviews received by the Better Business Bureau from Defendant's solicitation targets and customers include, but are far from limited, to the following:

> **May 1, 2017**
> ...THIS IS A SCAM and should be investigated and punished for what it is. They even use scare tactics with the mailers they send out. They get your information when you register your vehicle and that should also be stopped...
>
> **April 27, 2017**
> I would like to know how this company received my information. The fact they have my name, address, and info on my vehicle is bull consider [*sic*] the people who have it are NOT suppose [*sic*] to release it without approval. I NEVER consented for my info to be shared. So since they are allowed to contact me, I feel I have the right to know how they received my info.
>
> **April 11, 2017**
> One day in 2015, suddenly I got a mail which offered a car warranty. I have a Toyota car, and they knew my name, my car, car numbers, and the date of purchase. I thought they are [*sic*] from Toyota...
>
> **October 28, 2016**
> Have received several pieces of mail from this organization marked "FINAL NOTICE". It looks like a very past due bill...They are clearly a shady

---

[3] *See* https://www.bbb.org/stlouis/business-reviews/auto-service-contract-companies/vsc-marketing-group-d-b-a-repair-defense-network-in-saint-ann-mo-310443847 (last accessed May 5, 2017).

organization and shouldnt [*sic*] be in business…At the least, I no longer want to receive embarrassing mail marked "final notice" from this organization.

**September 17, 2016**
This fraud company sent unsolicited, illegally obtained mail to me stating "Time Sensitive" on inside of notice and "FINAL ATTEMPT" and "REQUEST FOR IMMEDIATE ACTION – TIME SENSITIVE MATERIAL ENCLOSED" with WARNING, etc.…This fraud company has NO legal authority to send any kind of thing…to my home nor do they have any legal authority over me and my vehicle. REMOVE MY NAME FROM MAILING AND DO NOT SELL.

**July 1, 2016**
I'm seeking your assistance regarding years of written harassment from a service offering extended warranties on both of my vehicles. They have identified my vehicles and I resent the invasion of my personal information…Several years ago I contacted a man at the phone number listed on the notices and requested I not be contacted again, making it very clear I did not want their service and the notices continue to come. All along I have been ripping them up and trashing them, but now I'm fed up with the annoyance and the fact that somehow they have retrieved my personal information. Concerns me what else they may have retrieved; my credit report? How are they obtaining this information? The DMV, can they provide that information to just anyone?…I am on the do not call and do not mail lists.

**June 22, 2016**
[T]his co. keeps sending me official looking mail stating this is the final attempt to get warranty on my vehicle. [T]hey are not affiliated with the dealer of manufacturer.

Desired Resolution: No further contact by the business. [T]his co should be checked out for sending out mail that is official looking that has final attempt and warning 2000.00 fine, 5 years imprisonment, or both for any person interfering or obstructing with delivery of this letter on their mail.

**April 24, 2016**
I received multiple postcards and letters in the mail with threatening language…Reading the fine print, it was a vehicle service company advertising an extended warranty on my car. I worry that others would be misled to think that they were in trouble with the law unless they paid for this service.

6

**March 10, 2016**
REMOVE my name and address from their databases, making [*sic*] lists, solicitation lists, phone lists – any list they maintain. They do not have my permission to send me bogus mail.

**March 2, 2016**
…I was addressed as if I had a post due account. Please see how extremely urgent they stated it to be. I think this kind of mai [*sic*] is extremely embarrasing[*sic*]/harassing[*sic*] coming through the mail or any where [*sic*]. I no longer have this vehicle.

**February 15, 2016**
…I have asked this company to remove me from their mailing list and do not contact me at least three times. Yet, every couple of months I start getting mail from them again. I don't know why they continue to harass me and I am amazed…they have my new mailing address as I've only lived at this address for almost a year.

**November 4, 2015**
I have been getting a flood of postal mail from the above said businesses. They are not legit. I wrote a letter…ask[ing] [the business] to stop and it was returned to me as "not deliverable"…I would greatly appreciate your telling this company to stop sending me mail.

**October 26, 2015**
The advertising mailer for this company is completely misleading. It [*sic*] designed in a way to make it look like a bill and/or important documentation for my car. I did not ask to be placed on the mailing list and it [*sic*] I am afraid that people (especially older people) will be confused by the wording and…forced to call and or respond in some way…

**October 26, 2015 (2)**
REMOVE OUR NAME AND ADDRESS AND NUMBER FROM YOUR LIST…DO NOT SEND US ANY SOLICITATIONS!!!!

**September 14, 2015**
We got an unsolicited letter from this company stating that our car's factory warranty is about to expire and that we need to contact this company immediately. The warranty expired years ago. The letter has no information about who is sending the notice. It's very misleading and relies on creating…fear in the recipient…

**September 14, 2015(2)**
They are constantly sending letters that are confusing and really look as [*sic*] phishing scam. How did they get my information?

7

**June 24, 2015**
I desire this business to remove me from their mailing list and delete my private information from all records and every business affiliated with them...

**June 4, 2015**
This company keeps sending "Final" notices to my widowed mother for a 2010 Mercury Marquis. I have sent at least three of these notices back in the last year with instructions for them to remove her from the mailing list...[W]e are extremely sensitive to anything regarding that car [because] my mothers [*sic*] husband, my stepfather, was killed in that car just    before their 21st anniversary.

**April 30, 2015**
Remove all of my information from your lists. I do not allow this company to contact me in any way. Delete all of my personal information.

**January 1, 2015**
Unsolicited mailings. I did not request any information from this company, nor is my vehicle warranty about to (or may be) expired... I demand to be removed from their mailing lists. I also demand to know how they obtained my information to mail info to me. I will also need written proof via email, from the company and/or their affiliates, confirming I am removed from the mailing list and this will not happen again.

[*Customer's Response to Business's apology*]:  In addition to the apology, I specifically requested to be informed of how this company obtained my information (name, address, vehicle info). A simple response of "through a third party" will no [*sic*] do. I need to know if my information is being sold/given out by the county registration office or the car dealership.

**December 18, 2014**
I'm not sure how they obtained my name, cell number, address, and make model & year of my car...but they have harassed me on average 2-3 days a week over a year trying to sell me an extended warranty on my car.

**December 15, 2014**
First complaint is that these companies can locate my car, my name, and address. I live alone and have a disability. I should not have to worry about who knows what car I drive or who has my address...I want them to delete all my information from their system and never contact me again. I want to find out how I can secure my personal information and privacy so no one can know me by my car, make, and model. I want to know what other complaint process is available to me.

**October 9, 2014**
Desired Resolution:  IMMEDIATE removal of ALL of my contact info from their scam lists and for them to STAY THE *** OUT OF MY PERSONAL INFO AND RECORDS

8

> **October 8, 2014**
> I want this company to stop contacting Me & my family & to NOT SELL MY NAME or my families [*sic*] name to any other misleading companies!!!!!
>
> **September 15, 2014**
> [I] recently purchased a used vehicle and was extremely suspicious when I started receiving notices from several companies that my warranty was going to expire soon...Upon questioning of whether they knew any of the details of my purchase or how they got my contact information, they had the response of "I wouldn't know any of that...that it the job of our marketing department."...Clearly they bought a list of ppl [*sic*] and addresses of those who have purchased used vehicles or who appliesd [*sic*] for credit and send these letters out. Very misleading advertising.

24. CarSure offers service contracts which purportedly provide warranty coverage for mechanical components of an individual's motor vehicle.

25. In order to promote its business, CarSure obtains personal identifying information originally gathered by the Wisconsin DMV, as well as the various departments of motor vehicles across the United States, from third-party data providers.

26. CarSure uses the personal information it collects to identify and solicit sales leads, *i.e.*, individuals who own motor vehicles for which the manufacturer's warranty is soon to lapse in violation of the DPPA. CarSure sends solicitations and marketing materials to those individuals offering one of its service contracts for an after-market warranty.

## IV. GENERAL ALLEGATIONS

*The DPPA*

27. The DPPA was enacted by Congress due to widespread concerns that personal information gathered by the states in connection with the licensing of motor vehicle drivers and registration of vehicles was being released, and even sold, to persons with no legitimate purpose in order to bolster the revenues of state departments of motor vehicles and unaffiliated third

9

parties. The result of this practice, as understood by Congress, was a massive invasion of drivers' and owners' privacy.

28.     Motor vehicle records are more reliable, and more accurate, than other sources of personal identifying information. Armed with personal information contained in motor vehicle records, third parties could—and, before the DPPA was enacted, routinely did—conduct invasive investigations on the subjects of the information; mine it on an aggregated basis and resell the resulting targeted information to marketers; use it to stalk, threaten, or physically injure the subjects of the information; or register for products and services using the identity of the subjects of the information.

29.     Due to the DPPA, these criminal and tortious acts are more difficult to carry out using personal information contained in motor vehicle records.

30.     Congress conducted extensive analysis and fact-finding in connection with the DPPA's enactment. According to Congress's conclusions, drivers (and others who provide their personal details to state departments of motor vehicles) have a privacy interest in the personal information that they provide to state departments of motor vehicles.

31.     Accordingly, by enacting the DPPA, Congress provided a private right of action to protect privacy interests and, if needed, enforce those privacy interests in a court of law. 18 U.S.C. § 2724.

32.     Section 2722 of the DPPA makes it "unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under" 18 U.S.C. § 2721(b).

33.     Section 2721(b) provides a set of "permissible uses" of DPPA-protected personal information. The permissible use exemptions to the DPPA allow the use of such information for

10

a highly limited number of purposes designed to promote the public welfare; they do not permit such information to be obtained, disclosed, or used for marketing or solicitation purposes – which is *precisely* what CarSure does.

**CarSure's Business Model**

34.     CarSure, and/or its affiliates and agents, purchased DPPA-protected personal information identifying Wisconsin vehicle owners and other vehicle owners across the United States from third-party data suppliers for purposes of marketing to individuals who own vehicles for which a manufacturer's warranty may be about to lapse, and used that personal information to send marketing and solicitation materials to those individuals so identified.

35.     Examples of the marketing/solicitation material CarSure sends to identified sales leads, as described in the preceding paragraph, are attached hereto as Exhibit A and Exhibit B. Exhibit A (address redacted) is a solicitation Plaintiff received from CarSure sometime in late January or early to mid-February 2016. Exhibit B (address redacted) is a solicitation Plaintiff received from CarSure sometime between February 26, 2016 and March 4, 2016.

36.     CarSure's ability to identify the target individuals and to send the marketing and solicitation materials, as described above, is only possible because CarSure obtains personal information derived directly or indirectly from motor vehicle records, or obtains copies of motor vehicle records themselves.

37.     Pursuant to 18 U.S.C. §§ 2721(b)(12) and 2722, CarSure is only permitted to obtain, disclose, or use personal information contained in motor vehicle records for purposes of marketing or solicitation if the individual to whom such information pertains provides "express consent," *i.e.*, consent in writing, for the data to be used in such a manner. CarSure neither obtains, nor seeks to obtain, that consent.

## V. **PLAINTIFF'S EXPERIENCES**

38. In late December 2015, or early January 2016, Kundinger renewed the registration and license plate for her 2013 vehicle by submitting the required information to the Wisconsin DMV, including her name and mailing address.

39. Sometime between late January and mid-February 2016, Kundinger received, via the U.S. Postal Service CarSure's marketing/solicitation material attached hereto as Exhibit A. Shortly thereafter, she received a second mailing containing CarSure's marketing/solicitation material attached hereto as Exhibit B.

40. In both mailings referenced in the preceding paragraph, CarSure identified Plaintiff's motor vehicle's make, model, and year, and made various statements aimed at inducing Plaintiff to contact CarSure about purchasing a vehicle services contract, including, but not limited to, the following:

> FINAL ATTEMPT
>
> NOTIFICATION THAT YOUR FACTORY WARRANTY MAY BE EXPIRING OR EXPIRED BASED ON TIME OR MILES.
>
> **TIME SENSITVE – PLEASE ACT NOW**
>
> THIS LETTER IS TO INFORM YOU THAT YOUR FACTORY WARRANTY MAY BE EXPIRED OR IS ABOUT TO EXPIRE BASED ON TIME OR MILES. IF IT HAS EXPIRED YOU WILL BE RESPONSIBLE FOR PAYING FOR ANY REPAIRS. YOU HAVE THE OPTION OF CONTINUING TO PROTECT YOUR VEHICLE BEYOND THE FACTORY WARRANTY. PLEASE RESPOND TO THIS OFFER NO LATER THAN 2/26/2016.

*See* Exhibits A and B.

41. Despite its official appearance, designed to suggest that the communication comes from a vehicle manufacturer or dealership, the bottom of the letter states, in fine print:

> Not affiliated with any dealer or manufacturer. You have been selected to receive this coverage offer from information contained solely in publicly available

records and no credit bureau or reporting data was used in relation to this advertisement.

See Exhibits A and B.

42. Upon information and belief, a third party data collection entity purchased Kundinger's personal information: (1) directly from the Wisconsin DMV, after Kundinger submitted to the Wisconsin DMV the information required to renew her registration and license plate, which included DPPA-protected personal information; (2) from the dealership to which Kundinger provided her driver's license in connection with her vehicle purchase; or (3) from a third-party which obtained the information from the Wisconsin DMV and subsequently sold or otherwise disclosed it to CarSure. In any case, the DPPA protects Kundinger's personal information, since both internal Wisconsin DMV records and Kundinger's registration and driver's license constitute motor vehicle records.

43. In turn, CarSure then obtained Kundinger's personal information and the personal information of other Wisconsin vehicle owners and vehicle owners and lessees in other states from that third party, or an entity to which that third party sold or disclosed her personal information, for the purpose of sending marketing/solicitation materials, such as those attached hereto as Exhibits A and B, to Kundinger and other similarly-situated people.

44. Among the DPPA-protected "personal information" obtained by CarSure was Kundinger's name and mailing address.

45. Kundinger had no previous knowledge of or interaction with CarSure prior to receiving the materials attached hereto as Exhibits A and B and did not request that the materials be sent to her.

46. Kundinger did not provide "express consent" to the Wisconsin DMV or any of its agents, the vehicle dealership from which she purchased her vehicle or any of its agents, or to

CarSure or any of its agents, allowing her personal information to be obtained, disclosed, or used for solicitation or marketing purposes.

47.   By obtaining from motor vehicle records and using for marketing and solicitation purposes Kundinger's name and mailing address, CarSure has violated the DPPA by violating her privacy interest in her personal identifying information contained in motor vehicle records associated with her.

48.   By obtaining from motor vehicle records, disclosing, and using for marketing and solicitation purposes Kundinger's name and mailing address, the other third-party data collectors and suppliers described above – the identities of which are presently unknown to Kundinger – likewise invaded Kundinger's privacy interest in her personal identifying information, as reflected in motor vehicle records associated with her.

## VII.   CLASS ACTION ALLEGATIONS

49.   Plaintiff brings this action individually and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class (the "Class") defined as:

> Each person, (1) from May 9, 2013, through the date of judgment herein, (2) whose name and mailing address (3) was obtained from a motor vehicle record by any person, (4) acquired by CarSure, and (5) used by CarSure for purposes of marketing and/or solicitation.

Excluded from the Class are persons who have expressly consented in writing to the acquisition, disclosure, or use of their "personal information" for purposes of marketing or solicitation; CarSure and its subsidiaries, affiliates, predecessors and entities with which it has merged; all persons who make a timely election to be excluded from the Class; governmental entities; the judge to whom this case is assigned and his/her immediate family; and Plaintiff's counsel as well as any agents, employees, or immediate family members of Plaintiff's counsel. Plaintiff reserves

the right to revise the Class definition based upon information learned through the course of discovery.

50. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claim on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

51. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that their individual joinder herein is impracticable. The precise number of Class members and their addresses is presently unknown to Plaintiff, but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by mail, Internet postings, and/or publication.

52. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Such common questions of law or fact include, but are not limited to:

    (a)    whether CarSure obtained "personal information" (as defined by the DPPA) from "motor vehicle records" (as defined by the DPPA);

    (b)    whether CarSure's acquisition, disclosure, or use of "personal information" from "motor vehicle records" was done knowingly;

    (c)    whether CarSure's acquisition, disclosure, or use of "personal information" from "motor vehicle records" was permissible under 18 U.S.C. § 2721(b).

53. Defendant engaged in a course of conduct giving rise to the legal rights Plaintiff seeks to enforce on her own behalf and on behalf of the other Class members. Identical statutory violations and actual injuries (including invasion of privacy rights) are involved. Numerous common questions predominate over any individual issues in this action.

54. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claim is typical of the other Class members' claims because, among other things, all Class members were comparably injured through Defendant's uniform misconduct described above. Further, there are no defenses available to Defendant that are unique to Plaintiff.

55. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other Class members she seeks to represent; she has retained counsel competent and experienced in complex class action litigation, including DPPA litigation; and Plaintiff intends to prosecute this action vigorously. Class members' interests will be fairly and adequately protected by Plaintiff and her counsel.

56. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if the Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court. Given the similar nature of the Class members' claims, class treatment of this litigation will ensure that all claims and claimants are before this

Court for consistent adjudication thereof and will be easily managed by the Court and the parties to this action.

## VIII. CLAIM ALLEGED

### CIVIL ACTION UNDER DRIVER'S PRIVACY PROTECTION ACT 18 U.S.C. § 2724(a)

57.   Plaintiff repeats, realleges, and incorporates by reference the foregoing paragraphs of this Complaint as though fully stated herein.

58.   The DPPA prohibits the acquisition, disclosure, or use of personal information without the express, written consent of the person to whom such information pertains for purposes of marketing and/or solicitation, as set forth by 18 U.S.C. § 2721(b)(12) and 18 U.S.C. § 2722.

59.   Plaintiff and the other Class members did not provide express consent for their personal information to be used for the purposes of commercial marketing and solicitation.

60.   The DPPA provides that "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted" under the Act "shall be liable to the individual to whom the information pertains" and that individual "may bring a civil action in a United States district court." *See* 18 U.S.C. §§ 2722 and 2724(a).

61.   Pursuant to the DPPA, a "person" means an individual, organization, or entity, but does not include a State or agency thereof. *See* 18 U.S.C. § 2725(2).

62.   Defendant meets the definition of a person in that it is an organization or entity, and not a State or agency thereof. *See* 18 U.S.C. § 2725(2).

63.   Pursuant to the DPPA, "personal information" means information that identifies an individual, including, but not limited to, "name [and] address." *See* 18 U.S.C. § 2725(3).

64.     CarSure has, and continues to, knowingly obtain Plaintiff's and other Class members' personal information from motor vehicle records for purposes of commercial marketing and solicitation of Plaintiff and the other Class members.

65.     CarSure has not obtained Plaintiff's or any other Class member's express, written consent prior to obtaining such personal information from motor vehicle records for purposes of commercial marketing and solicitation of Plaintiffs and the other Class members

66.     In doing so, CarSure has acted willfully and with reckless disregard of the DPPA, the privacy rights of Plaintiff and all Class members, and the substantive and procedural statutory rights the DPPA affords to Plaintiff and all Class Members.

67.     Each act of knowingly obtaining, disclosing, or using Plaintiff's and other Class members' personal information from motor vehicle records for the purposes of commercial marketing and solicitation without first obtaining express consent constitutes a separate DPPA violation by CarSure.

68.     Pursuant to the DPPA, the Court may award actual damages, but not less than liquidated damages in the amount of $2,500 for each violation; punitive damages upon proof of willful or reckless disregard of the law; reasonable attorneys' fees and other litigation costs reasonably incurred; and such other pecuniary and equitable relief as the Court deems appropriate. *See* 18 U.S.C. § 2724(b).

69.     Plaintiff, for herself and each Class member, seeks damages in the amount of $2,500 for each violation of the DPPA; punitive damages; reasonable attorneys' fees and other litigation costs; and injunctive relief ordering CarSure to cease its unlawful practice of obtaining, disclosing, and/or using personal information from motor vehicle records for marketing and solicitation purposes.

## IX. REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Class members, respectfully requests that this Court enter judgment on her behalf, and on behalf of all other Class members, and against Defendant, as follows:

    a.    declaring that this action may be maintained as a class action;

    b.    certifying the Class pursuant to Federal Rule of Civil Procedure 23, appointing Plaintiff as class representative, and approving Plaintiff's selection of counsel as class counsel;

    c.    granting judgment in favor of Plaintiff and the Class and against CarSure in the amount of $2,500 for each instance in which CarSure knowingly obtained, disclosed, or used personal information from a motor vehicle record for purposes of marketing or solicitation;

    d.    punitive damages sufficient to deter CarSure and other businesses from abusing the privacy rights of drivers;

    e.    reasonable attorneys' fees and litigation costs incurred;

    f.    an order enjoining CarSure from any future acquisition, disclosure, or use of personal information from motor vehicle records for purposes of marketing and solicitation; and

    g.    all other relief that the Court determines to be appropriate.

## X. JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

/s/ Bruce A. Schultz

Dated: May 9, 2017

**COYNE, SCHULTZ, BECKER & BAUER, S.C.**
Bruce A. Schultz
150 East Gilman Street, Suite 1000
Madison, Wisconsin 53703
Tel: (608) 255-1388

Andrew B. Miller
Jacob M. O'Brien
**STARR AUSTEN & MILLER, LLP**
201 South Third Street
Logansport, Indiana 46947
Tel: (574) 722-6676

Adam J. Levitt
Amy E. Keller
**DICELLO LEVITT & CASEY LLC**
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois 60602
Tel: (312) 214-7900

*Counsel for Plaintiff and the Proposed Class*